James A. Morris, Esq. (SBN 210932)
jmorris@jamlawyers.com
Shane E. Greenberg, Esq. (SBN 210932)
**MORRIS LAW FIRM**
4001 West Alameda Avenue Suite 208
Burbank, CA 91505
Tel:  (747) 283-1144
Fax:  (747) 283-1143

Daniel J. Orlowsky
**ORLOWSKY LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax;    (314) 455-7375
*dan@orlowskylaw.com*
*(Pro Hac Vice Pending)*

Adam M. Goffstein
**GOFFSTEIN LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax:    (314) 455-7278
*adam@goffsteinlaw.com*
*(Pro Hac Vice Pending)*

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET PEGGI LOUISE GARVEY on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>        v.<br><br>S.C. JOHNSON & SON, INC.,<br><br>            Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Margaret Peggi Louise Garvey ("Plaintiff" or "Plaintiff Garvey") brings this action on behalf of herself and all others similarly situated against S.C. Johnson & Son, Inc. (otherwise referred to as "Defendant" or "S.C. Johnson").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

**INTRODUCTION**

1.      This is a class action lawsuit against Defendant S.C. Johnson for selling its household and personal care product Ziploc® Brand seal top bags as "recyclable" when, in fact, they are not recyclable because they are made from low-density polyethylene ("LDPE" or "Plastic No. 4") film that is not recyclable and, as a result, the Products contaminate the recyclable waste stream and decrease the recyclability of otherwise recyclable materials.

2.      Among other purportedly "recyclable" products, Defendant develops, manufactures, markets, and sells a variety of household and personal care products, including:

- Ziploc® Brand Freezer Bags Two Gallon / XL
- Ziploc® Brand Freezer Bags Gallon / Large
- Ziploc® Brand Freezer Bags Quart / Medium
- Ziploc® Brand Freezer Bags Pint / Small
- Ziploc® Brand Storage Bags Two Gallon / XL
- Ziploc® Brand Storage Bags Gallon / Large
- Ziploc® Brand Storage Bags Quart / Medium
- Ziploc® Brand Sandwich Bags XL
- Ziploc® Brand Sandwich Bags
- Ziploc® Brand Sandwich & Snack Lunch Pack
- Ziploc® Brand Snack Bags
- Ziploc® Brand Slider Freezer Bags Gallon / Large

- Ziploc® Brand Slider Freezer Bags Quart Medium

- Ziploc® Brand Slider Storage Bags Gallon / Large

- Ziploc® Brand Slider Storage Bags Quart / Medium

- Ziploc® Brand All Purpose Marinade Bags

- Ziploc® Brand Zip'n Steam Cooking Bags

- Ziploc® Brand Vacuum Sealer 11" Roll

- Ziploc® Brand Vacuum Sealer 8" Roll

- Ziploc® Brand Vacuum Sealer V200 Series

- Ziploc® Brand Vacuum Sealer Gallon Bag

- Ziploc® Brand Vacuum Sealer Quart Bags

(hereinafter the "Products" or "Ziploc® Brand Products").

3.       This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendant with respect to the marketing and sale of its household and personal care products, which are sold throughout the State of California and throughout the country.

4.       Plastic waste is an increasingly dire international problem. Nearly 90% of plastic waste is not recycled. Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[1]  According to a recent study, at least 1.2 to 2.5 million tons of plastic trash from the United States was dropped on lands, rivers, lakes, and oceans as litter, were illegally dumped, or shipped abroad and then not properly disposed of.[2]  As consumers have become increasingly aware of the problems associated with pollution, many

---

[1] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/aotearoa/story/how-does-plastic-end-up-in-the-ocean/ (last accessed June 1, 2022).
[2] Associated Press, *Study: 1 to 2 million tons a year of U.S. plastic trash goes astray*, L.A. TIMES (Oct. 30, 2020, 11:03 AM) https://www.latimes.com/world-nation/story/2020-10-30/study-1-to-2-million-tons-of-us-plastic-trash-goes-astray (last accessed June 1, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL

consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

5.　　　Seeking to take advantage of consumers' demands for such products, Defendant markets its Ziploc® Brand seal top bags as "recyclable." The labeling and packaging of the Products contain the chasing arrow symbol that is commonly used and understood to mean that a product is recyclable and claim that they are "recyclable." Defendant's marketing materials are replete with statements that the Products are "recyclable." And Defendant's website for its Ziploc® Brand Products claim that the Products "are made with high-quality, recyclable materials so that your food, your family, and our planet stay protected" and "Ziploc® brand bags are recyclable." In truth, the bags contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable materials, and are not recyclable because they are made from low-density polyethylene plastic ("LDPE" or "Plastic No. 4").

6.　　　In the United States municipal recycling facilities ("MRFs") collect recyclable waste, often through curbside pickup. The recyclable waste is sorted and sold to facilities that can process the material into clean flake material that can be sold and used to make new plastic items. However, it is not cost effective to process LDPE plastic domestically. And, over the past few years, due to foreign export restrictions, the foreign market for LDPE plastic has all but been eliminated. Thus, products made of LDPE plastic end up incinerated, in landfills or in the environment. What is more, most MRFs classify products made of LDPE film as a recycling contaminant because they can clog up recycling equipment and reduce the value of otherwise recyclable items, including otherwise recyclable plastics."[3] As a result, the Products are non-recyclable.

---

[3] Angela Hill, Bay Area recycling tips: Can I recycle that or not?, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited June 2, 2021).

4

7.      Defendant knows that the Products typically end up in landfills or incinerated and are a contaminant unsuitable for recycling.  Defendant's representations that the Products are "recyclable" are material, false, misleading and likely to deceive members of the public.

8.      Plaintiff purchased the Products in reliance on Defendant's representations that these Products are "recyclable." She would not have purchased the Products had she known that they were not recyclable.

9.      Plaintiff and the Class reasonably believed Defendant's false and misleading representations.  Defendant knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under California law.

10.     Plaintiff and the Class Members paid a premium for the Products over comparable products that did not purport to be "recyclable." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's representations that they are "recyclable," Plaintiff and Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

11.     Plaintiff brings claims against Defendant individually and on behalf the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*; (3) fraud; (4) negligent misrepresentation; (5) violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*; and (6) unjust enrichment.

## PARTIES

12.     Plaintiff Margaret Peggi Louise Garvey is a California citizen who resides in Novato, California.  During the class period alleged herein, Plaintiff Garvey purchased

Ziploc® Brand Products on numerous occasions from Safeway stores in Marin County. Plaintiff Garvey was specifically interested in purchasing recyclable household and personal care products. Plaintiff Garvey's purchases include, without limitation, Ziploc® Brand Sandwich Bags.

13.     Plaintiff Garvey purchased the Ziploc® Brand Products because she saw the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products are "recyclable." Plaintiff Garvey relied on Defendants' false, misleading, and deceptive representations that the Products are "recyclable." She understood this to mean that she was purchasing recyclable products. Plaintiff Garvey would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the Ziploc® Brand Products, if she had known that they were not recyclable and, as a result, contaminate the recyclable waste stream and decrease the recyclability of otherwise recyclable materials. Plaintiff Garvey would purchase the products in the future if Defendant changed the composition of the Products so that they conformed to their "recyclable" labeling, or if the labels were corrected and she could trust that they were correct.

14.     Defendant S.C. Johnson & Sons, Inc. is a corporation with its principal place of business located at 1525 Howe Street, Racine, WI 53403. Defendant S.C. Johnson & Sons, Inc. owns the Ziploc® trademark, and manufactures, markets, advertises, and distributes its Ziploc® Brand Products throughout the United States. Defendant S.C. Johnson & Sons, Inc. created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a

1   citizen of a state different from Defendant.  This Court has supplemental jurisdiction over state

2   law claims pursuant to 28 U.S.C. § 1367.

3       16.     This Court has personal jurisdiction over Defendant because Defendant is a

4   corporation with sufficient minimum contacts in California or otherwise intentionally avails itself

5   of the laws of this State through their marketing of the products at issue in California to consumers

6   in California, and through its direct sales of the products at issue in California to consumers in

7   California, so as to render the exercise of jurisdiction by this Court consistent with traditional

8   notions of fair play and substantial justice.

9       17.     Venue is proper in this District pursuant to 28 U.S.C. 1391. Substantial acts in

10  furtherance of the alleged improper conduct, including the dissemination of false, misleading and

11  deceptive information regarding the nature, quality, and/or formulation of the products, occurred

12  within this District.

13                      **COMMON FACUTAL ALLEGATIONS**

14  **Plastic Waste is a Dire Problem**

15      18.     In the past decade humans across the globe have produced 8.3 billion metric tons of

16  plastic, most of it in disposable products and packaging that ends up as trash or pollution.[4]  Of the

17  8.3 billion metric tons produced, 6.3 billion metric tons have become plastic waste and only 9% of

18  that has been recycled.[5]  A third of the single-use plastic generated ends up in the natural

19  environment, accounting for 100 million metric tons of plastic pollution in 2016.[6]  Current

20  estimates suggest that there are over 150 million tons of plastics in the ocean.[7]  The Environmental

---

[4] Roland Geyer, et al., *Production, use, and fate of all plastics ever made*, SCIENCE ADVANCES, Jul. 19, 2017, https://www.science.org/doi/10.1126/sciadv.1700782 (last accessed Jun. 22, 2022).
[5] *Id.*
[6] *No Plastic in Nature: Accessing Plastic Ingestion From Nature to People*, WWF, June 2019, https://d2ouvy59p0dg6k.cloudfront.net/downloads/plastic_ingestion_web_spreads.pdf at p. 6 (last accessed Jun. 22, 2022).
[7] *The New Plastics Economy Rethinking the Future of Plastics*, ELLEN MACARTHUR FOUNDATION AND MCKINSEY & COMPANY (2016), https://ellenmacarthurfoundation.org/the-new-plastics-economy-rethinking-the-future-of-plastics at p. 17 (last accessed Jun. 22, 2022).

1   Protection Agency estimates that Americans alone disposed of more than 33 million tons of plastic

2   in 2014, most of which was not recycled.[8]  While California had a goal to achieve a 75% recycling

3   rate by 2020, California's recycling rate is actually in decline.  According to CalRecycle, in 2014

4   California's recycling acceptance rate was 50%, dropping to 47% in 2015 and down to 44% in

5   2016.[9]

6

7        19.     The staggering amount of plastic waste accumulating in the environment is

8   accompanied by an array of negative side effects.  For example, plastic debris is frequently

9   ingested by marine animals and other wildlife, which can be both injurious and poisonous.

10  Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can

11  leach harmful chemicals into ground water that is absorbed by humans and other animals.  Plastic

12  litter on the streets and in and around our parks and beaches also degrades the quality of life for

13  residents and visitors.  More recently, scientists have discovered that plastic waste releases large

14  amounts of methane, a powerful greenhouse gas, as it degrades.  Thus, plastic waste is also

15  thought to be a significant potential cause of global climate change.  Consumers, including

16  Plaintiff, actively seek out products that are compostable, recyclable or reusable to prevent the

17  increase in global waste and to minimize their environmental footprint.

18

19  **Defendant's False and Misleading Representations**

20       20.     Defendant has misrepresented that the Ziploc® Brand Products are recyclable.

21       21.     Defendant's labeling and packaging for the Ziploc® Brand Products claims that

22  they are recyclable.  More specifically, the labeling and packaging of the Products contain the

23  chasing arrow symbol that is commonly used and understood to mean that a product is recyclable

24

25

26

27  _____

[8] *Advancing Sustainable Materials Management: 2014 Fact Sheet*, U.S. EPA, Nov. 2016,
https://www.epa.gov/sites/default/files/2016-11/documents/2014_smmfactsheet_508.pdf at p. 2 (last accessed Jun. 22, 2022).

28  [9] *California's Statewide Recycling Rate*, CALRECYCLE, last updated Mar. 3, 2020,
https://www.calrecycle.ca.gov/75percent/recyclerate (last accessed Jun. 22, 2022).

and claim that they are "recyclable."  Defendant makes this claim on the packaging of all the

Products:



22.     The packaging for the Products claims that they are recyclable.  However, each of these representations is false and misleading.  The Products are not recyclable because they are made from low-density polyethylene (LDPE, aka Plastic No. 4)[10] film that is not recyclable and, as a result, the Products contaminate the recyclable waste stream and decrease the recyclability of otherwise recyclable materials.

---

[10] https://www.whatsinsidescjohnson.com/us/en/brands/ziploc/ziploc-brand-sandwich-bags (last visited June 29, 2022).

10

23.     The back of the Products' packaging contains a store drop-off representation despite the limited availability of such programs.  Defendant makes this claim on the packaging of some of the Products:



24.     These Products cannot be recycled by established recycling programs.  Rather, the plastic bags must be dropped off at participating stores.  This is because plastic bags and film cannot be separated for recycling.  Although the fine print representations on these Products communicate that the Products must be "dropped off" to be recyclable, many stores do not accept the Products for recycling.  In the past, California required supermarkets of a certain size to maintain a plastic bag collection bin, but that rule expired on January 1, 2020.  *See* California Public Resources Code § 42257.  Consequently, many retail stores in California no longer accept plastic bags for drop-off recycling.

25.     Due to the lack of recycling markets for plastic bag film, 93% of California MRFs do not even accept it, and the MRFs that do accept it do not have the capacity to recycle large quantities of plastic film.  Based on these data, even if more consumers returned plastic bag film for drop-off recycling, California MRFs do not have the capacity to sort and recycle it.  Thus, the representation that these Products are recyclable if dropped off fails to communicate the limited

11

availability of both drop-off sites and programs capable of actually recycling the Products and, thus, makes these representations false and misleading.

26.     Defendant's marketing materials are replete with statements that the Ziploc® Brand Products are recyclable.

27.     Defendant's website for its Ziploc® Brand contains the following statements that its Products are recyclable:

> "SUSTAINABILITY & SAFETY: Ziploc® brand bags are made with high-quality, recyclable materials so that your food, your family, and our planet stay protected."[11]

> "RECYCLE BAGS: Yes, it's true, Ziploc® brand bags are recyclable. Really!"[12]

> "IT'S IMPORTANT! The process of recycling uses far less energy than manufacturing with brand new raw materials. Recycling conserves energy and natural resources, reduces pollution, and helps prevent landfills from filling up. Simply put, recycling protects the environment for children, grandchildren, and great grandchildren."[13]

28.     However, each of these representations is false and misleading.  The Products are not "recyclable" because they are made from low-density polyethylene (LDPE, aka Plastic No. 4) film that is not recyclable and, as a result, the Products contaminate the recyclable waste stream and decrease the recyclability of otherwise recyclable materials.

**LDPE Bags Are Not Recyclable and Instead Are a Harmful Contaminant**

29.     Recycling is "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180. Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item.

---

[11] https://ziploc.com/en/Sustainability-and-Safety (last visited June 22, 2022).
[12] *Id.*
[13] *Id.*

30.     In the United States, after plastics are discarded into a recycling bin, they are sent to a MRF where the plastics are sorted by resin type.  Plastics numbered #3-7 are batched together to form mixed bales which require further processing.  However, "the economics [of processing those bales] have proven insurmountable."[14]  Prior to 2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China.  However, on January 1, 2018, China enacted the National Sword policy which limits plastic waste imports.  There is, however, minimal demand, value, and processing capacity for them in the United States.  Thus, mixed plastic #3-7 bales which were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'"[15]  As a result, the majority of LDPE or No. 4 plastic sent to recycling facilities is incinerated, which releases large quantities of greenhouse gases and toxic air emissions.

31.     Moreover, even if consumers returned plastic bag film for drop-off recycling as the Products' store drop-off representations instruct, the Products are still not recycled.  Again, due to the lack of recycling markets for plastic film, 93% of California MRFs do not even accept it, and the MRFs that do accept it do not have the capacity to recycle large quantities of plastic film. Based on these data, even if more consumers returned plastic bag film for drop-off recycling, California MRFs do not have the capacity to sort and recycle it.  Ultimately, plastic film Products are not accepted by most MRFs nor can they be collected, sorted, or separated from the general waste stream.  So even in the rare instance where the Products can be segregated and cleaned of any contamination, the Products still end up in landfills as there is no market to reuse the Products

---

[14] *Circular Claims Fall Flat*, Greenpeace, at 10, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last visited Jun. 22, 2022).

[15] *Id.* at 11.

or convert them into a material that can be reused or used in manufacturing or assembling another item.  Consequently, there is no end market to recycle such Products.

32.    Defendant is aware that the store drop-off representations on the Products' labeling and packaging is false and misleading.  According to its own data, "[t]here are 18,000-plus stores around the United States that currently accept Ziploc® brand bags and other plastic film items for recycling.  But only 4 percent of the plastic film actually gets recycled each year."[16]

33.    Not only are LDPE plastics, such as the Products, unrecyclable, but in many cases, they contaminate the waste stream and decrease the recyclability of otherwise recyclable items.  Contaminants are any plastic materials that MRFs do not accept or decrease the recyclability of other items.  Because the Products are made of LDPE film they are especially problematic.  Plastic films risk clogging and breaking down machinery used to sort recyclable products. As a result, many MRFs do not accept plastic bags at all.

34.    A high presence of contamination, including unrecyclable films such as LDPE, in the recycling stream, makes otherwise recyclable plastic materials unrecyclable because purchasers of recyclable materials value bales of plastic by the percentage of unrecyclable contaminant present in the bales.  If contamination exceeds a certain level, the bale must be incinerated or sent to a landfill. Therefore, not only is LDPE not recyclable, it may also prevent recycling of otherwise recyclable materials.

35.    Accordingly, Defendant's use of LDPE plastic means its Products are not recyclable and the labeling and packaging claims regarding recyclability are therefore false.

36.    At a minimum, Defendant's marketing of the Products as suitable and beneficial for recycling purposes is an unfair practice under the UCL, as it undermines both state and local

---

[16] https://www.scjohnson.com/en/stories/sustainable-world/plastic-reuse-and-recycling/2019/recycling-ziploc-bags-getting-communities-closer-to-curbside-recycling-for-plastic-film (last visited July 11, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL

policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment.  The manufacture and use of LDPE plastic bags—which cannot be recycled and that complicate and contaminate the collection and recycling of truly recyclable materials—undermines the public policies that recycling programs, and consumers who recycle, seek to achieve.

**Defendant's Marketing of the Products Violates California Public Policy and the Federal Trade Commission Green Guides**

37.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products."  Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs."  *Id.* § 42355.

38.     Additionally, California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."  Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for Use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides").  Cal. Bus. & Prof. Code § 17580.5; *see also* 16 C.F.R. § 260.1, *et seq.*  As detailed below, Defendant's marketing of the Products as "recyclable" violates several provisions of the FTC's Green Guides.

39.     First, Defendants' marketing of the Products as "recyclable" violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products can actually be converted into reusable material.  Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or by implication, that a product or package is recyclable.

A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  Defendant's use of the chasing arrow symbol that is commonly used and understood to mean that a product is recyclable both claims that the Products are "recyclable" and communicates that the Products are recyclable.  But the Products are made from LDPE plastic that is not recyclable, and is neither accepted by most MRFs nor can that type of plastic film be collected, sorted, or separated from the general waste stream.

40.     The Green Guides further explain that "[m]arketers should *clearly and prominently* qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b) (emphasis added). And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1, 1998).  As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.*, at 24243.

41.     Here, although Defendant states that the Products "are recyclable when clean and dry at drop-off bins at participating retailers" on the bottom of the packaging box in a small and inconspicuous font, the statement fails to qualify the fact that the Products are made from LDPE and that LDPE bags are not recyclable nor are they suitable for recycling.  In the absence of clarifying language, reasonable consumers understand this to mean that the Product is designed for recycling wherever an established municipal or private recycling program is available, which is false.  Studies have proven that consumers do not have reasonable access to facilities that will

actually process LDPE or Plastic No. 4.[17]  Yet Defendant continues to label these Products as recyclable with the universal recycle symbol.  Thus, the representation that these Products are recyclable if dropped off at retailers fails to communicate the limited availability of programs capable of actually recycling the Products in violation of the Green Guides.

42.     Defendants' marketing of the Products as "recyclable" violates these provisions of the Green Guides because Defendant falsely implies that its Products are suitable for recycling and recyclable even though the Products cannot be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item.  Although the Products may be accepted for recycling by some curbside programs, LDPE waste is ultimately incinerated or sent to landfills.

43.     Moreover, the "recyclable when clean and dry at drop-off bins at participating retailers" qualification does not satisfy the safe harbor examples in the Green Guides because it does not inform consumers of the limited availability of recycling programs for the Products.  16 C.F.R. § 260.12(b).  A reasonable consumer is likely to believe that if a store has a drop-off bin, then the Products are likely recyclable.  By including the language "recyclable when clean and dry at drop-off bins at participating retailers," Defendant is incorrectly implying that consumers need only clean and dry the Products and place them in drop-off bins at participating retailers in their community, not whether the recycling facilities in their community actually recycle the Products. The FTC has explicitly stated such an implication is deceptive. *See* 63 Fed. Reg. 84, 24244 (May 1, 1998); 16 C.F.R. § 260.12(b)(2).

44.     Worse yet, even if a consumer followed Defendant's directive to clean and dry the Products and bring them to drop-off bins at participating retailers, Defendant's marketing of the

---

[17] John Hocevar, Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability, GREENPEACE REPORTS, Feb. 18, 2020, https://www.greenpeace.org/usa/research/report-circular-claims-fall-flat/.

Products as "recyclable" violates these provisions of the Green Guides because Defendant falsely implies that the Products are suitable for recycling and are recyclable even though the Products cannot be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some programs, LDPE waste is ultimately incinerated or sent to landfills. In sum, Defendant's recyclable representations on the Products are false, misleading, and deceptive to reasonable consumers.

45. Defendant's "recycling" claim is also deceptive because it is an overstatement of environmental attribute. 16 C.F.R. § 260.3(c). "An environmental marketing claim should not overstate, directly, or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible." *Id.* Defendant asserts an environmental benefit where no meaningful benefit exists. *Id.* As detailed above, 93% of California MRFs do not even accept LDPE, and the MRFs that do accept it do not have the capacity to sort and recycle it. As a result, the Products are not accepted by most MRFs nor can they be collected, sorted, or separated from the general waste stream. Consequently, there is no end market to recycle such Products.

46. Finally, the Green Guides require marketers to support their environmental claim with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendant does not possess information sufficient to support their claims that the Products are "recyclable."

**Defendant Misleadingly Markets the Products to Increase Profits and Gain a Competitive Edge**

47.     Defendant markets the Products as "recyclable" to capitalize on consumer demand for "green" products.  In particular, Defendant intends for reasonable consumers to believe, and reasonable consumers do believe, that the Products are recyclable and do not contaminate the recycling waste stream.  Further, Defendant intends for consumers to believe, and reasonable consumers do believe, that because the Products are "recyclable," they are specially designed to be environmentally superior to competitors' products that do not contain the same representation.

48.     Defendant's illegal marketing campaign has been extremely successful.  Defendant is among the largest sellers of storage plastic bags nationally.  The Products are sold in grocery stores, drug stores, and big box stores throughout California and the country. Because of the big potential for sales, Defendant has no incentive to stop claiming that the Products are "recyclable" or change their disclaimers to discourage sales.

49.     Because consumers are led to believe the Products are "recyclable" and, therefore, purchase them because they are a "green" product, Defendant is able to charge a premium for the Products.  If consumers knew that the Products were not recyclable and contaminated the recyclable waste stream, the Products would not command a premium price based on that representation, fewer consumers would purchase them, and Plaintiff would not pay the premium attributable to that representation.

## CLASS ALLEGATIONS

50.     Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of herself and the following Class of similarly situated individuals:

> All persons who purchased the Ziploc® Brand Products in California during the Class Period.

Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchases the Products for resale, and the Judge(s) assigned to this case.

51.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

52.     Numerosity: Plaintiff does not know the exact size of the Class, but she estimates that it is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

53.     Common Questions Predominate:  This action involves common questions of law and fact to the potential classes because each Class Member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

      a.  Whether Defendant advertises and markets the Products by representing that the Products are recyclable;

      b.  Whether the Products are recyclable;

      c.  Whether Defendant unfairly, unlawfully and/or deceptively failed to inform class members that the Products are made from materials (*i.e.*, LDPE aka No. 4 plastic) that are not recyclable;

      d.  Whether Defendant's marketing, advertising, packaging, and labeling claims regarding the recyclability of the Products are likely to deceive a reasonable consumer;

e.  Whether Defendant knows the Products cannot be recycled;

f.  Whether Defendant's recycling instructions are adequate;

g.  Whether Defendant's representations regarding the recyclability of the Products are likely to be read and understood by a reasonable consumer;

h.  Whether Defendant's representations regarding the recyclability of the Products are in compliance with the Green Guides;

i.  Whether Defendant's claims regarding the recyclability of the Products would be material to a reasonable consumer of the Products;

j.  Whether Defendant's conduct in advertising, marketing and labeling of the Products constitutes a violation of California consumer protection laws;

k.  Whether Defendant's representations regarding recycling constitute representations that the Products have characteristics, benefits or qualities which they do not have;

l.  Whether Defendant advertised its Products without an intent to sell them as advertised;

m.  Whether Defendant has been unjustly enriched from the sale of the Products;

n.  Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

o.  The amount of the premium lost by class members as a result of such wrongdoing;

p.  Whether punitive damages are warranted for Defendant's conduct and, if so, an appropriate amount of such damages;

q.  Whether Plaintiff and the Class members are entitled to injunctive, equitable and monetary relief; and

COMPLAINT AND DEMAND FOR JURY TRIAL

r.    Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

54.    Typicality: Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendant engaged in violation of law as described herein.  Plaintiff and Class Members purchased one or more boxes of the Products.  In addition, Defendant's conduct that gave rise to the claims of Plaintiff and Class Members (*i.e.*, marketing, sales and advertising of the Products as suitable for recycling and/or recyclable) is the same for Plaintiff and all members of the Class.  Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

55.    Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains.  Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class Members.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the class.  By prevailing on her own claims, Plaintiff will establish Defendant's liability to all Class Members.  Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

56.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the

impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

57.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

58.     Plaintiff does not plead, and hereby disclaims, any causes of action under any regulations promulgated by the FTC.  Plaintiff relies on these regulations only to the extent such regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

### (Violation of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*)

### On Behalf of Herself and the Class

59.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

60.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

23

61.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

62.     Plaintiffs other class members are "consumers," as that term is defined by California Civil Code § 1761(d), because they bought the Ziploc® Brand Products for personal, family, or household purposes.

63.     The Products that Plaintiff (and others similarly situated class members) purchased from Defendant were and are "goods" within the meaning of California Civil Code § 1761(a).

64.     Defendant is a "person," as defined by the CLRA in California Civil Code, section 1761(c).

65.     Purchase of the Products by Plaintiff and members of the class are "transactions," as defined by the CLRA in California Civil Code, § 1761(e).

66.     By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.  In violation of California Civil Code § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold.  In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code § 1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.  In violation of California Civil Code § 1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact.  In violation of California Civil Code § 1770(a)(9), Defendant has

advertised goods or services with intent not to sell them as advertised.  Specifically, in violation of §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9), Defendant's acts and practices led customers to falsely believe that the Products are recyclable, when they are not.  In violation of § 1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike products not specifically denominated as "recyclable," the Products are recyclable.

67.     Defendant's uniform and material misrepresentations and omissions regarding the Products were likely to deceive the public.  Defendant knew or should have known that its misrepresentations and omissions were untrue and misleading.

68.     Plaintiff and members of the class could not have reasonably avoided such injury.  Plaintiff and members of the class were unaware of the existence of the facts that Defendant suppressed and failed to disclose; and Plaintiff and members of the class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

69.     Plaintiff and members of the class have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or the premium paid for the Products.

70.     Given that Defendant's conduct violated § 1770(a), Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the class will continue to suffer harm.

71.     CLRA § 1782 NOTICE. On January 25, 2022, Plaintiff provided Defendant with notice and demand that within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.

Defendant failed to respond to Plaintiff's letter or to take any of the requested actions within thirty days.  Plaintiff seeks, pursuant to California Civil Code § 1780(a), on behalf of herself and those similarly situated members of the Class, actual damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices. With regard to the amount of damages and restitution, Plaintiff seeks to recover for herself and the Class a full refund of the price paid for the Products, or in the alternative, the price premium paid for the Products, *i.e.*, difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation.  This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

72.     Plaintiff also requests that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### PLAINTIFF'S SECOND CAUSE OF ACTION

**(False Advertising, Business and Professions Code § 17500, *et seq*. ("FAL")**

**On Behalf of Herself and the Class**

73.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

74.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

75.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe the Products are recyclable when they are not.  Defendant deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of otherwise recyclable items, and are not recyclable.

76.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

77.     Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

78.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

79.     The aforementioned practices, which Defendant has used, and continue to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

80.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  In particular, Plaintiff, and those similarly situated, paid a price premium for the Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation.  This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.  Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

81.     Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims.  Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her causes of action 1, 3 and 4, in the event that such causes of action will not succeed.  Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy at law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in paragraphs in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members.  *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'").  In addition, Plaintiff and the Class may be unable to obtain such relief under causes of action 3 and 4 and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the FAL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

82.     Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

83.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and marketing is modified to disclose the omitted facts about the recyclability of the Products.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the

Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant are not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFF'S THIRD CAUSE OF ACTION

### (Fraud, Deceit and/or Misrepresentation)

### On Behalf of Herself and the Class

84.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

85.     Defendant fraudulently and deceptively led Plaintiff to believe that the Products were "recyclable" when they are not.  Defendant deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of otherwise recyclable items, and are not recyclable.

86.     These misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Products.

87.     Defendant made identical misrepresentations and omissions to members of the Class regarding the Products.

88.     Plaintiff and those similarly situated relied to their detriment on Defendant's fraudulent misrepresentations and omissions.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

89.     Defendant had a duty to inform class members at the time of their purchases that the Products were not recyclable and made from materials that are not recyclable.  Defendant omitted to provide this information to class members.  Class members relied to their detriment on Defendant's omissions. These omissions were material to the decisions of the class members to purchase the Products.  In making these omissions, Defendant breached its duty to class members. Defendant also gained financially from, and as a result of, its breach.

90.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff, and those similarly situated, to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff, and those similarly situated, to, without limitation, pay a premium to purchase the Products.

91.     As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff, and those similarly situated, have suffered damages.  In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the price premium paid for the Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation.  This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

92.     Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

**On Behalf of Herself and the Class**

93.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

94.     Defendant provided false and misleading information regarding the Products, representing that the Products are "recyclable" when the Products are not.  Defendant deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of otherwise recyclable items, and are not recyclable.

95.     These representations were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Products.

96.     Defendant made identical misrepresentations and omissions to members of the Class regarding the Products.

97.     Defendant's representations regarding the Products are material to a reasonable consumer because they relate to the composition of the Products purchased by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

98.     At all relevant times, Defendant should have known its representations to be false and had no reasonable grounds for believing them to be true when they were made.  Defendant had no reasonable grounds for believing its representations were not false and misleading.

99.     By and through such negligent misrepresentations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendant negligently induced Plaintiff, and those similarly situated to, without limitation, to purchase the Products.

100.     Plaintiff and those similarly situated relied to their detriment on Defendant's negligent misrepresentations.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

101.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and those similarly situated have suffered damages.  In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the price premium paid for the Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation.  This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

**(Unfair, Unlawful and Deceptive Trade Practices,**

**Business and Professions Code § 17200, *et seq.*)**

**On Behalf of Herself and the Class**

102.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

103.    Within four (4) years preceding the filing of this Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the conduct outlined in this Complaint.

104.    Defendant, in its marketing, advertising, and labeling of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, marketing and labeling the Products as "recyclable" when they are not. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores, point-of-purchase displays, as well as Defendant's official website, and other advertisements.

105.    Defendant's labeling, marketing, and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are "recyclable."

32

106. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.

107. Defendant does not have any reasonable basis for the claims about the Products made in Defendant's marketing, advertising, and on Defendant's packaging or labeling because the Products are not recyclable. Defendant knew and knows that the Products are not "recyclable" though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products were "recyclable."

108. In addition, Defendant's use of various forms of marketing and advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code §§ 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code § 17200.

109. The misrepresentations by Defendant alleged herein constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business and Professions Code § 17200, as set forth more fully below.

110. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

111. Plaintiff and Class members would not have purchased the Products but for the representations by Defendant about the Products as "recyclable."

112. Plaintiff and Class members have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false representations.

33

113.    All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

114.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling, marketing, and advertising the Products as "recyclable."  Likewise, Plaintiff and Class members seek an order requiring Defendant to rectify such misrepresentations through truthful disclosures, and to preclude Defendant from denying the existence and significance of said misrepresentations in response to inquiries regarding the Products.  Plaintiff and Class members have no alternative adequate remedy at law.  Without equitable relief, Defendant's unlawful, fraudulent, and unfair practices will continue to harm Plaintiff and the Class.  Plaintiff and Class members also seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

115.    Defendant has engaged, and continues to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation:

    a.  deceptively representing to Plaintiff, and those similarly situated, the Products are "recyclable";

    b.  failing to inform Plaintiff, and those similarly situated, that the Products are not recyclable, are a harmful contaminant, and decrease the recyclability of otherwise recyclable items;

    c.  failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable;

d. contravening and undermining state policies expressed in California Public Resource Code § 42355 ( "[u]se of the term 'degradable,' 'biodegradable,' 'decomposable,' or other like terms on plastic products is inherently misleading unless the claim includes a thorough disclaimer providing necessary qualifying details, including, but not limited to, the environments and timeframes in which the claimed action will take place") and § 42355.5 (it is "the public policy of [California] that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products"); and

e. contravening and undermining state and local policies in favor or recycling, recycling programs, and reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment.

116. Defendant has engaged, and continues to engage, in fraudulent practices as described herein, in violation of the UCL, by, without limitation:

a. deceptively representing to Plaintiff, and those similarly situated, the Products are "recyclable";

b. failing to inform Plaintiff, and those similarly situated, that the Products are not recyclable, are a harmful contaminant, and decrease the recyclability of otherwise recyclable items; and failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable.

117. Defendant has engaged, and continues to engage, in unlawful practices as described herein, in violation of the UCL, by, without limitation, violating the following laws:

a. the Federal Trade Commission Green Guides regulations, including, without limitation, 16 C.F.R. §§ 260.2, 260.3, 260.12(a), and 260.12(b) as described herein;

b. the Environmental Marketing Claims Act, including, without limitation, Cal. Bus. & Prof. Code § 17580(a) (Defendant has not maintained in written form in their records information and documentation supporting the validity of their representation) and §17580.5(a) (Defendant's representations and omissions complained of herein constitute untruthful, deceptive, or misleading environmental marketing claims) as described herein (collectively, "Greenwashing");

c. the CLRA as described herein; and

d. the FAL as described herein.

118.    Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) the Products.

119.    Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

120.    Defendant engaged in these unfair practices to increase its profits.  Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by § 17200, *et seq.* of the California Business and Professions Code.

121.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

122.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

In particular, Plaintiff and those similarly situated paid a price premium for the Products, *i.e.*, the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation.  This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.  Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

123.    Plaintiff seeks, on behalf of those similarly situated, equitable relief, including restitution for the premium and/or the full price that she and others paid to Defendant as a result of Defendant's conduct.  Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to her "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct.  Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to her "unlawfulness" claims in this UCL cause of action because the FTC Green Guides and Environmental Claims Marketing Act do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

124.    Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL deceptiveness claims.  Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her causes of action 1, 3 and 4, in the event that such causes of action will not succeed.  Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy of law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized

understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (9th Cir. 2011) (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class).  In addition, Plaintiff and the Class may be unable to obtain such relief under causes of action 3 and 4 and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendants acted in good faith.

125.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and/or unlawful.

126.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging, labeling, and marketing is modified to remove the implication that the Products are recyclable and disclose the omitted facts about the recyclability of the Products.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant was not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PLAINTIFF'S SIXTH CAUSE OF ACTION**

### **(Unjust Enrichment)**

### **On Behalf of Herself and the Class**

127. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

128. At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

129. Plaintiff and the Class members conferred benefits on Defendant by purchasing the Products.

130. Plaintiffs and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

131. Defendant voluntarily accepted and retained the benefits conferred.

132. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

133. Retention of that money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented through its labeling, advertising and marketing materials that the Products are recyclable, when the Products are not in fact recyclable.

134.     These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the Products are not recyclable.

135.     Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendant ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.

136.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

a.     Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

b.     An order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.     An order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.     An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

e.     An order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and order Defendant to engage in corrective action;

f.     An award of compensatory damages in an amount to be determined at trial;

g.    An award of statutory damages in an amount to be determined at trial;

h.    An award of punitive damages in an amount to be determined at trial;

i.    An award of treble damages;

j.    An award of restitution in an amount to be determined at trial;

k.    An order requiring Defendant to undertake a corrective advertising campaign;

l.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

m.    For injunctive relief as pleaded or as the Court may deem proper;

n.    For reasonable attorney's fees and the costs of suit incurred; and

o.    For such further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this action.

Dated:  March 30, 2023        Respectfully submitted,

James A. Morris, Esq.
Shane Greenberg, Esq.
Attorneys for Plaintiffs

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, James A. Morris, declare as follows:

1.      I am counsel for Plaintiff, and I am the owner of Morris Law Firm.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because the Defendant has done and is doing business in the County of Marin.  Such business includes the marketing, distributing, and sale of Better Life Products at various retail stores.

3.      Plaintiff purchased her Ziploc® Products from a store in Marin County.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 30, 2023 at Burbank, California.

James A. Morris, Jr.